## Florence M. Hazard, Appellant, v. Nathaniel T. Hazard, Individually and as Administrator et al., Appellees.

### Gen. No. 22,888.

1. DIVORCE—*what is sufficient proof of service of notice by mail on nonresident.* In a suit against a nonresident for divorce, where notice is served by mail, proof of receipt of such notice is not required, but a certificate of the clerk that the notice was mailed is sufficient compliance with the statute.

2. DIVORCE, § 45*—*when evidence sufficient to show notice of divorce proceedings.* On a bill of review to set aside a decree of divorce, evidence examined and *held* to show that complainant had knowledge and notice of the divorce and agreed to the terms of the decree.

3. DIVORCE, § 67*—*when wife barred by laches from questioning default decree.* One who, with full knowledge of the pendency of a suit against her for divorce, acquiesces in and agrees to all that is done and accepts a financial settlement based thereon and does not question the decree until the husband has been dead more than

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

four years after the entry of the decree, is barred by laches from contesting such decree, especially where there is no reason for the delay and the rights of innocent third persons have intervened.

4. DIVORCE—*when depositions may be used.* On a suit for divorce, it is not required by the Act of 1874, sec. 8 (J. & A. ¶ 4223), that the witnesses be examined orally in open court, but they may be heard by deposition, the purpose of the act being only to prevent the reference of default divorce causes to masters in chancery.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed May 21, 1917.

ELLIS & LEWIS and BLUIM & TEED, for appellant.

ALBERT CHANDLER, C. M. CLAY BUNTAIN and CLAYTON W. MOGG, for appellees.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from a decree dismissing a bill of review for want of equity. The decree involved is one of divorce for desertion obtained by the then husband of complainant on service by publication. The learned chancellor before whom the case was tried made a very searching inquiry into all of the facts and circumstances involved in the divorce proceeding and called complainant to the witness stand and examined her as the court's witness, allowing each of the parties to the litigation the latitude of cross-examination. While many errors are assigned on the record, the case really resolves itself into the pivotal one of absence of jurisdiction to enter the decree because, it is alleged, defendant was not served with process, either personally or by publication.

We have been furnished by counsel with a voluminous array of case law exceeding citations of more than one hundred sixty authorities, including the Bible, Magna Charta, the State and federal constitutions, and

in scope covering many jurisdictions, which, to use a sententious remark of the late Mr. Justice Adams in *Salomon v. Estate of Wincox,* 104 Ill. App. 277, have about as much relation to the decision of this case as "The Lay of the Last Minstrel."

The bill of review in this case was instituted by complainant after the death of her former husband, and the administrators of his estate, one here and another in St. Louis, Missouri, were made parties defendant. The Cook county administration failed to procure assets, while the St. Louis administration disclosed an estate of something less than $10,000.

To contend that complainant did not have notice and knowledge of the divorce suit from its commencement to its final determination would, in view of the record, be an affront to credulity. The procedure and the decree as shown by complainant's bill were regular. Complainant was proceeded against as a nonresident of the State of Illinois and as residing in the City of New York, that her then residence was at 164 West 74th street, New York City. A copy of the notice published in conformity with the affidavit of nonresidence was mailed, as provided by statute, to complainant, Florence Hazard, 164 West 74th street, New York City, State of New York. Another copy was mailed to complainant at New York City without any particular notation of address. The law does not require proof that complainant received a copy of the notice mailed. The clerk certified as to the mailing and we think that this was a sufficient compliance with the statute. Were it otherwise it might be impossible to prove that the complainant received the notice sent by mail unless forwarded by registered mail, for which the statute makes no provision. The default record in evidence proved the sending of the notice by mail to complainant and a compliance with the statute in this regard, and the decree recites that complainant had notice of the pend-

ency of the suit by publication according to the statute and that the default of complainant was taken and the bill taken as confessed against her.  Then the court specifically finds that the husband, William Hazard, was an actual resident of Cook county at the time the bill was filed and had been a resident of the State of Illinois for more than one year next before the filing of the bill, and then finds the fact that subsequent to the marriage complainant, Florence Hazard, had been guilty of wilfully deserting and absenting herself from her husband without any reasonable cause, for the space of two years, as charged in the bill of complaint, and a decree dissolving the marriage followed. The decree was entered December 3, 1910, and William Hazard, complainant in the divorce bill, died intestate on the 3rd of February, 1914.

. Complainant averred in her bill that she never either before or since the entering of the divorce decree had been summoned or served with a copy of the bill of complaint or received any notice by mail of the pendency of the suit as required by statute.  This averment is not true, and counsel in a way abandoned the contention that complainant had no notice of the suit or of the trial of the case, but narrowed the contention to one that she did not receive a copy of the notice mailed to the address at 164 West 74th street, New York City.  It appears from the admissions of complainant that at or about the time when the notice was mailed she did stay at 164 West 74th street, New York City. Her own testimony develops the fact that she employed counsel, a Mr. May in New York City, to come to Chicago and arrange with her husband about the settlement of their marital differences; that May came to Chicago and made such arrangements with the counsel of her husband and that she paid May $300 for his services.  After the divorce, complainant's husband made a financial settlement with complainant, by which

she received money and a large quantity of household furniture. Complainant wrote to her husband on February 7, 1911, saying: "I agree to the proposition of dividing the cash value of the policies ($775.20). Any papers that I must sign can be forwarded. Florence M. Hazard, 175 W. 78th street, New York City." Complainant also accepted in her own handwriting service of a notice to take depositions which were subsequently taken and used on the hearing of the divorce case; so she had actual knowledge not only that the suit was pending, but that the depositions were to be taken to be used by her husband on the trial.

If complainant had any purpose of disputing her husband's claim to a divorce from her on the grounds stated in his bill, she had every opportunity to make such defense at the time; and she should not have permitted the matter to have proceeded to decree and to the financial settlement which was subsequently made between them if she had any purpose of contesting the divorce suit thereafter.

While it is true that a decree procured on service by publication is in its nature *nisi* until the expiration of three years, at the expiration of such three years it becomes absolute. Within these three years and during the lifetime of complainant's husband, if she for any reason were dissatisfied with the decree or the settlement, she could have appeared and demanded a hearing. What with the implication of service raised by the clerk's certificate of mailing the notice of publication to her in New York City, coupled with the further fact that she had actual knowledge of the pendency of the suit and negotiated in relation thereto and made a settlement which she indicated was satisfactory to her at the time, she is estopped after the death of her late husband from challenging the truth of these surface appearances.

While complainant in the first instance denied knowl-

edge of the pendency of the divorce suit, she subsequently, under an examination by the chancellor, admitted that she had such knowledge. Her denial at no time rested upon anything more than the technical one that she had not received the notice mailed to her by the clerk of the court at 164 West 74th street, New York City. This is evidently a subterfuge on her part in an attempt to avoid the consequences of her knowledge of all that had taken place. It is patent from all the evidence that the divorce was by arrangement between the parties, complainant being represented by Mr. May as her counsel, who came to Chicago and ascertained, we will assume, every fact material to be known to the adjustment of the marital differences between his client and her husband.

The evidence develops that complainant became dissatisfied with her husband by reason of his financial reverse of fortune. He had been in the receipt of $3,000 a year, and was reduced to a salary of $100 per month. It seems that complainant's husband was indebted to his mother and another relative at the time of the financial settlement and that some little time prior to the death of complainant's husband he inherited property from his mother and from one Elliott C. Jewett, and it is this fund which provokes this proceeding. The financial issue is really the only practical one involved and is the inspiring reason prompting complainant to seek to set aside the decree of divorce of which she had actual knowledge from the time it was rendered. Furthermore, it is fairly inferable from the testimony that complainant received a copy of the decree of divorce a very short time after that decree was entered.

Complainant is in a court of conscience. She is appealing for the adjustment of rights resting in conscience and to such she must be strictly held.

Complainant by this proceeding seeks a review of

errors alleged in the divorce decree. Were that decree before us by writ of error, the same questions would arise as in the bill of review case. We think that *Mallory v. Mallory,* 160 Ill. App. 417, is very much in point both on fact and principle. The court there said: "We are of opinion that it would be inequitable and unjust to permit plaintiff in error to now prosecute this writ of error to a reversal of the decree for the sole purpose of permitting him to procure a share of the estate." This observation is equally applicable to Mrs. Hazard's case. While it is true Mrs. Hazard did not appear in court in her divorce suit, as a matter of fact she was represented in the suit by her counsel from New York, and the terms of the decree were agreed to by him for her and she ratified his actions in this regard *in toto.* The decree is therefore in the nature of a consent decree.

We are also of the opinion that complainant is barred from contesting the divorce decree by reason of laches, she having with full knowledge of all the circumstances acquiesced and agreed with all that was done, accepting the financial settlement and waiting until her husband had been dead nearly a year and more than four years after the entry of the decree, all of which shows a lack of diligence which a court of equity will not sanction.

Furthermore, the rights of innocent third parties have intervened, namely, the heirs of William Hazard. There is no explainable reason for such a delay. In *Maher v. Title Guarantee & Trust Co.,* 95 Ill. App. 365, which is a similar case, where a party with knowledge of the proceedings and of the decree of divorce took a sum of money agreed upon, it was held that delay alone, unless satisfactorily explained, would bar the right of attack.

An implication of laches arises from conditions which are not in dispute in this case. None of these

has complainant by any averment in her bill attempted to excuse.

Complainant also predicates lack of jurisdiction of the court to enter the divorce decree upon the fact that but one witness was heard orally, the rest of the witnesses being heard by deposition; that such a hearing does not fulfil the statutory requirement that witnesses shall be examined in open court; and *Suesemilch v. Suesemilch,* 43 Ill. App. 573, is the only case cited in which any reference so narrow can be found, and in that case the court said: "We do not wish to be understood as indicating that depositions may not also be received. In the present case we pass merely upon the question presented, as stated in this opinion."

In the *Suesemilch* case, *supra,* the decree was entered upon the oral examination of one witness and the deposition of another. With all due respect to the decision, we are unable to concur in its reasoning. The purpose of the Act of 1874 was not to compel all the witnesses to be examined in open court, but to prevent a default divorce cause from being referred to a master in chancery. A witness heard by deposition is as much heard in open court as is one who appears in person before the court. In contemplation of law the witness in the deposition is before the court, and equal effect is to be accorded to the testimony of witnesses produced by deposition as to those produced in open court and testifying *viva voce;* and the tests regarding the weight and character of such evidence are the same.

The demands of complainant are inequitable. The court entered the divorce decree with jurisdiction of the parties and the subject-matter. That jurisdiction complainant for four years allowed to go unchallenged, and made no move to have the decree disturbed until after her husband's death. The doctrine of laches is a sufficient answer to complainant's cause.

The learned chancellor did not err in dismissing the bill for want of equity, and the decree of the Circuit Court is affirmed.

*Affirmed.*